# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DOLLAR TREE STORES, INC., | ) |
| Plaintiff/Counterdefendant, | ) |
| v. | ) Civil Action No.: 2:10-cv-2055 |
| BAYLESS INVESTMENT & TRADING COMPANY, | ) |
| Defendant/Counterclaimant. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Dollar Tree Stores, Inc.'s ("Dollar Tree") Amended Motion for Summary Judgment. (Dkt. No. 45). Concurrently before the Court is Defendant Bayless Investment & Trading Company's ("Bayless" or "BIT") Cross Motion for Partial Summary Judgment. (Dkt. No. 51).[1]

### I. Background

The heart of this matter is an alleged lease agreement between Dollar Tree (the tenant) and BIT (the landlord). At issue is whether Dollar Tree is bound under a lease through 2015, pursuant to a renewal option within the agreement. Dollar Tree maintains that the alleged agreement is void under Arizona's version of the Statute of Frauds because Dollar Tree, the party to be charged, never signed the agreement.

For the reasons that follow, the Court GRANTS in part Dollar Tree's Amended Motion for Summary Judgment, (Dkt. No. 45), and DENIES BIT's Cross Motion for Partial Summary Judgment. (Dkt. No. 51). Because questions of fact remain as to damages, the Court reserves this issue for trial.

---

[1] BIT's Motion requests summary judgment on the issue of Dollar Tree's liability under the terms of the agreement, leaving the quantification of damages for trial.

1

## II.   Procedural Posture

On September 24, 2010, Dollar Tree initiated this matter by filing a Complaint in the United States District Court for the District of Arizona seeking declaratory relief as to the rights and obligations of the Parties with respect to the alleged agreement. (Dkt. No. 1). On May 9, 2011, Dollar Tree filed its initial Motion for Summary Judgment (Dkt. No. 25). On May 23, 2011, BIT filed a Motion to Defer Response to Summary Judgment Until After a Decision on the Rule 56(d) Motion and Completion of Discovery. (Dkt. No. 31). The Court granted this Motion, (Dkt. No. 32), and Dollar Tree waited to file its Amended Motion for Summary Judgment until August 30, 2011. (Dkt. No. 45). Subsequently, BIT filed a Cross Motion for Partial Summary Judgment on September 13, 2011. (Dkt. No. 51). The Court heard oral argument on the Motions on November 4, 2011, and this matter is ripe for disposition.

## III.   Material Facts

In 2004, Dollar Tree assumed the remaining months on a lease agreement between BIT and Factory 2-U Stores, Inc. ("Factory 2-U"), one of BIT's prior tenants who filed for bankruptcy. Because only four months remained until the Factory 2-U lease would expire, Dollar Tree negotiated with BIT to extend the lease and to add or modify certain lease terms. As part of the modification, BIT agreed to extend the lease term for an additional five years—through January 31, 2010. BIT also agreed to include an additional five-year renewal option that Dollar Tree could exercise at the end of the 2010 lease term. Should Dollar Tree choose to exercise the option, the lease would extend through 2015. Although a Dollar Tree executive negotiated the terms of the agreement, Dollar Tree used outside counsel Scott Kipnis ("Kipnis") to memorialize

the negotiations and to draft the original offer (the "Assignment Contract") to be presented to BIT.[2]

After Dollar Tree executed the Assignment Contract and delivered the agreement to BIT,[3] BIT signed the contract and inserted an additional term by its signature stating: "Unless [BIT] receives written notice on or before November 1, 2009 [that Dollar Tree] elects not to exercise the five year option in paragraph 12, the option shall be deemed automatically exercised by [Dollar Tree]." There is some dispute between the parties as to which party suggested adding this Automatic Exercise Provision ("AEP"). What is not disputed, however, is that after BIT added this provision and signed the contract, no officer at Dollar Tree with signing authority initialled or signed the form of the agreement containing the AEP (the "Counteroffer).[4]

BIT made repeated requests for Dollar Tree to initial the Counteroffer. Kipnis, Dollar Tree's attorney, even represented that Dollar Tree would sign the agreement. Ultimately, however, Dollar Tree never authorized the Counteroffer by initialling or signing the document, and for unknown reasons, BIT's attempts to obtain an agreement signed by both Parties subsided.

Dollar Tree subsequently moved into the property described in the Counteroffer and the Assignment Contract, (the "Property"), and began operating one of its retail stores beginning in October 2004. On October 5, 2004, an associate at Kipnis's law firm sent a letter to BIT stating:

> As you know, Dollar Tree Stores, Inc. ("Dollar Tree") became the tenant under the *subject lease* as of October 1, 2004, in accordance with the Order of the

---

[2] All parties agreed that the new terms for the lease agreement between Dollar Tree and BIT would be executed by inserting the terms into the Assignment Contract in which Factory 2-U assigned the remaining four months of its lease term to Dollar Tree.

[3] When Dollar Tree sent the Assignment Contract as its original offer to BIT, both Dollar Tree and Factory 2-U had signed the agreement.

[4] *See infra* Part B.i.

3

United States Bankruptcy Court for the District of Delaware and the Assignment and Assumption Agreement between Factory 2-U Stores, Inc. and Dollar Tree, *copies of which are attached.*

(emphasis added). The *attached copies* of the *subject lease*, that Dollar Tree's attorney referenced in the letter, contained the AEP. The letter identified the Counteroffer as the document subject to which Dollar Tree became the tenant at the Property.

During the period that Dollar Tree operated its retail store from the Property, Dollar Tree kept a copy of the Counteroffer in its files. At no point during its occupation of the Property did any Dollar Tree representative communicate to BIT that it disagreed with the language of the AEP or that the Counteroffer was binding.

On January 21, 2010, ten days before the parties believed the original lease agreement would terminate, Dollar Tree informed BIT in writing that Dollar Tree only intended to continue its occupancy of the Property for a few more months as a hold over tenant, indicating that Dollar Tree would not be exercising the five-year renewal option. Dollar Tree last paid monthly rent to BIT in April 2010 and surrendered possession of the Property on April 28, 2010. BIT refused to accept the surrender, returned the keys to Dollar Tree, and continues to insist that Dollar Tree is bound under the terms of the lease through January 31, 2015. BIT claims that Dollar Tree never provided written notice that it would not exercise its option by the date required in the AEP. Accordingly, BIT claims that Dollar Tree is bound under the lease agreement until January 31, 2015.

Dollar Tree counters that it never signed and executed the agreement with the additional AEP term—the Counteroffer, and that as a result, the alleged agreement is void under the Statute of Frauds. Dollar Tree initially filed this cause of action for declaratory relief, asking the Court to find that (i) the AEP is not enforceable, or (ii) in the alterative, Dollar Tree did not exercise its

option, and (iii) that the lease terminated on January 31, 2010, and Dollar Tree remained on the Property during the additional months as a month-to-month hold over tenant.

In response, BIT claims that the Statute of Frauds does not void the contract because, *inter alia*, exceptions to the Statute of Frauds exist that will prevent the Statute of Frauds from voiding the accepted Counteroffer.

### IV.     Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must go beyond the pleadings and mere allegations to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 323. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Indeed, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

Moreover, the Statute of Frauds is an affirmative defense on which the proponent bears the burden of proof. *See Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 114 P.3d 835, 842 (Ariz. Ct. App. 2005) (citing *Lakin Cattle Co. v. Engelthaler*, 419 P.2d 66, 68 (Ariz. 1966); Ariz. R. Civ. P. 8(c)).

## V. Discussion

### A. Contract Formation

Every dispute regarding the enforcement of an alleged agreement between two parties should begin in an identical manner. The Court must first determine whether the parties, in fact, formed an agreement. This question requires the Court to consider whether a meeting of the minds existed between the parties at the time the alleged agreement formed. Where there are multiple stages to negotiations before an agreement is formed, the Court must determine (i) which of the offers constitutes the final offer, and (ii) whether the final offeree accepted the final offer.

#### i. The Offer

An offer is "[t]he act or an instance of presenting something for acceptance." *Black's Law Dictionary* (9th ed. 2009). Once an offer is made, the offeree may either accept the offer or reject it. If the offeree accepts the offer, a contractual agreement is formed. If the offeree rejects the offer, the original offer terminates and the parties remain unbound.

Arizona follows the traditional common law rule, which requires a mirror image acceptance of an offer in order to consummate an agreement. *See Clark v. Compania Ganadera de Cananea, S.A.*, 385 P.2d 691, 697 (Ariz. 1963). If the offeree adds additional or materially different terms to the agreement when "accepting" the offer, the offeree will instead be considered to have rejected the initial offer and to have made a counteroffer containing the additional terms. *See United California Bank v. Prudential Ins. Co. of America*, 681 P.2d 390, 422-23 (Ariz. Ct. App. 1983) (citing *Clark*, 385 P.2d 691). In effect, the offeree becomes the offeror.

The new offeree may now accept or reject the counteroffer. *Id.* at 423. ("A counter-offer can become the basis of a contract if it is accepted by the person who made the original offer.").

In view of the negotiations before the Court, Dollar Tree signed the original offer document (the Assignment Contract) and sent the offer to BIT. Upon receipt, BIT added the AEP, signed the document, and returned the document to Dollar Tree to be initialed or signed. This constituted BIT's rejection of the original offer and the creation of BIT's Counteroffer to Dollar Tree. "The pivotal question before us then is whether" Dollar Tree accepted the BIT counteroffer. *Salt River Project Agr. Imp. and Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 267, 274-75 (Ariz. Ct. App. 1983).[5]

### ii. Acceptance via Conduct

An offer or counteroffer can be accepted by an express act or by implication from conduct. *Black's Law Dictionary* (9th ed. 2009); 9 *Az. Prac.* § 7:6 (2010-2011 ed.) ("The standard used to determine whether conduct constitutes acceptance is whether a reasonable person would understand it to constitute assent and acceptance of the terms of the offer. Written words, spoken words, conduct, and action are all permissible manifestations of acceptance.").

Not only did Dollar Tree take occupancy of the Property in question *after* receiving a copy of the Counteroffer, but Dollar Tree also continued to make lease payments, as required in

---

[5] Dollar Tree's briefing assumes that the original offer from Dollar Tree to BIT, without the AEP, (the "Assignment Contract") is binding on the Parties. Dollar Tree argues that the AEP was a modification to the Assignment Contract. Dollar Tree claims that because it never agreed to the modification, the AEP cannot become part of the Assignment Contract agreement.
    Dollar Tree's argument fails because BIT did not modify an existing legal agreement between the Parties. The additional language could not be considered a modification because no agreement existed to be modified. BIT *simultaneously* added the AEP and signed and accepted the terms in Assignment Contract. The additional language was significant and was a necessary condition to BIT's acceptance. The court finds that BIT would not have given Dollar Tree a five-year renewal option in the Assignment Contract without also requiring a notice provision as to whether Dollar Tree would exercise the option.
    In summary, BIT created a counteroffer when it added the AEP to the original Assignment Contract. It is the Counteroffer, not the original Assignment Contract, which could potentially form an agreement between the Parties. As explained in the body of the Opinion, the Counteroffer terminated the Assignment Contract as the original offer and left the original offeror (Dollar Tree) as the offeree.

the Counteroffer, from October 2004 through April 2010. Dollar Tree made use of the Property for over five years and continued to act as if the lease agreement governed. Dollar Tree kept a copy of the agreement, containing the AEP, on file in its office. An associate at the firm Dollar Tree used as outside counsel in negotiating the agreement sent a signed letter to BIT, enclosing the Counteroffer (the Assignment Contract with the AEP) and indicating that this document was a true and correct copy of the agreement between the parties. Throughout Dollar Tree's time operating its retail store from the Property, Dollar Tree behaved as if the Counteroffer was binding, and the Court finds that Dollar Tree accepted the Counteroffer by its conduct and the resulting implications.

## B. Applying the Statute of Frauds

A court should consider the application of the Statute of Frauds to an alleged agreement only after the issue of contract formation is resolved. *See Johnson v. Gilbert*, 621 P.2d 916, 919 (Ariz. 1980) (citing *Gene Hancock Constr. Co. v. Kempton & Snedigar Dairy*, 510 P.2d 752 (Ariz. Ct. App. 1973)), *rev'd on other grounds*, *Turley v. Ethington*, 146 P.3d 1282 (Ariz. 2006). Once a court finds that an agreement exists, the Statute of Frauds is an evidentiary hurdle that must be overcome so that the parties may present evidence of the alleged agreement. *See Pinnacle Peak Developers v. TRW Inv. Corp.*, 631 P.2d 540, 544 (Ariz. Ct. App. 1980) (identifying the Statute as an evidentiary rule meant to exclude certain unreliable forms of evidence).

### i. No signature exists to satisfy the Statute of Frauds

Relevant to the case at bar, Arizona's Statute of Frauds provides that a party may not bring a court action in relation to a leasing agreement for a period longer than one year "unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in

8

writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized." Ariz. Rev. Stat. Ann. § 44-101(6) (2010).

Dollar Tree, the party to be charged, contends that it never signed the Counteroffer, rendering the alleged agreement void under the Statute of Frauds. BIT proffers a number of theories arguing that Dollar Tree's attorneys signed and executed the Counteroffer. The Court finds these arguments unpersuasive. Dollar Tree's attorneys did not have the authority or the requisite intent to execute the Counteroffer. *See Bishop v. Norell*, 353 P.2d 1022, 1025 (Ariz. 1960). For these reasons, the agreement is void, and unless the Court is persuaded that an exception exists to the Statute of Frauds, no evidence of the alleged agreement may be presented before the Court.

    ii.   **No Exceptions to the Statute of Frauds Exist**

BIT argues that exceptions to the Statute of Frauds apply in this case.[6]

    **a. Full Performance**

First, BIT argues that full performance bars the application of the Statute of Frauds. *In re MacDonald's Estate*, 417 P.2d 728, 733 (Ariz. Ct. App. 1966) (noting that an agreement is removed from the Statute of Frauds where there has been complete performance). However, a

---

[6] BIT discusses acceptance and ratification as a potential exception to the Statute of Frauds. Although abundant case law exists discussing this exception in relation to a contract for the sale of goods, the Court has not unearthed, nor have the parties cited, any law recognizing acceptance and ratification as a Statute of Frauds defense in relation to real property leases. Because the Court is not persuaded that the principles of acceptance and ratification are applicable in the real property context, the Court finds that this argument will not prevent the application of the Statute of Frauds here.
    As discussed *infra* in Part B.ii.b, the part performance doctrine is an accepted exception to the Statute of Frauds in the real property context. The part performance exception in the real property context is similar to the acceptance and ratification exception in the sale of goods context. The distinction between the two is that part performance is only available when a party seeks equitable relief. A legal remedy is adequate in this case. For that reason, and as discussed *infra*, part performance does not apply.
    The inapplicability of the part performance exception itself provides further credence for the Court's previous finding—that the acceptance and ratification exception is inapplicable in the setting of real property leases. Applying the acceptance and ratification exception in the real property context would essentially provide an end-run around the equitable requirements inherent in the part performance exception to the Statute of Frauds. The Court does not find, and BIT has not shown, that applying the acceptance and ratification doctrine to real property leases would be appropriate.

lease agreement is, by its very nature, executory. *Trollope v. Koerner*, 470 P.2d 91, 98 (Ariz. 1970) ("We take it to be fundamental that one cannot claim full performance of a contract, such as a lease, which would be, if performed, concededly executory on both sides."). Although there are certain situations in which a lease agreement is non-executory, none of these circumstances are presently before the Court. *See id.*

BIT seeks to enforce a provision of the lease agreement requiring Dollar Tree to use the Property over the next five years. This event is set to occur at a point in the future. By definition, BIT could not have fully performed events that have not yet occurred. Accordingly, the contract is executory, and the full performance exception to the Statute of Frauds does not apply.

### b. Part Performance and Estoppel

Nor do the equitable doctrines of estoppel or part performance render the Statute of Frauds inapplicable. It is well established in Arizona that a party may be equitably estopped from asserting the Statute of Frauds as a defense. *Del Rio Land, Inc. v. Haumont*, 574 P.2d 469 (Ariz. 1977). As preliminary clarification, "the 'part performance' exception to the statute of frauds is grounded in the equitable principle of estoppel." *Owens v. M.E. Schepp Ltd. P'ship*, 182 P.3d 664, 668 (Ariz. 2008) (citing *Gene Hancock Constr. Co.*, 510 P.2d at 755).

> Whether this doctrine is labeled 'estoppel' or 'part performance' does not affect the ultimate result of its application, which is that a party may be precluded from asserting the Statute of Frauds as a defense when he has induced or permitted another to change his position to his detriment in reliance on an oral agreement which would be within the Statute."

*William Henry Brophy Coll. v. Tovar*, 619 P.2d 19, 22 (Ariz Ct. App. 1980) (citing *Gene Hancock Constr. Co.*, 510 P.2d 752).

For a party to escape the evidentiary hurdle of the Statute of Frauds through the application of equitable doctrines such as part performance and estoppel, Arizona courts have

repeatedly affirmed that the party seeking to enforce the oral agreement must be seeking an equitable remedy. *William Henry Brophy Coll.*, 619 P.2d at 23; *Trollope*, 470 P.2d at 98 (citing *Evans v. Mason*, 308 P.2d 245, 248 (Ariz. 1957) ("This court has squarely held that notwithstanding the procedural merger of law and equity, the equitable doctrine of part performance is inapplicable in a suit where only money damages are sought")). Where a party seeks only a remedy at law, the equitable doctrines are unavailable to escape Statute of Frauds. *William Henry Brophy Coll.*, 619 P.2d at 23.[7]

Although BIT prayed for both legal and equitable relief, it is beyond dispute that equitable relief is unavailable where a remedy at law would be adequate to make a party whole. *See Haynie v. Taylor*, 213 P.2d 684, 689 (Ariz. 1950); *Shreeve v. Greer*, 173 P.2d 641, 644 (Ariz. 1946) (court will specifically enforce a contract where remedy at law is inadequate). The facts and circumstances of this case lead to the conclusion that monetary relief would put

---

[7] During oral argument, counsel for BIT suggested that the restriction on equitable defenses in relation to the Statute of Frauds only applied to the part performance doctrine, not the estoppel doctrine more generally.

> THE COURT: ... I forgot to ask you, how -- your argument about remedy at law, you know, how that affects any equitable relief.
> ...
> MR. MCGINNIS: I think those cases that they cited only relate to the part performance exception, not to Gratification [sic] or estoppel, the general estoppel doctrine, or to the full performance doctrine. At least that's the way I read them.
> THE COURT: I think that was cited in that part of the brief. That's right.

Summ. J. Mots. Hr'g Tr. 29:5-7; 31:17, Nov. 4, 2011.

Upon further review, the Court finds that BIT's position runs counter to the findings in *William Henry Brophy College*. That court found that "where a party attempting to enforce an oral agreement seeks an equitable remedy, such as specific performance, the equitable doctrines of estoppel and part performance are available to him." 619 P.2d at 23. Moreover, construing the exceptions in the manner BIT desires also fails to accord with the underpinnings supporting the longstanding Arizona distinction between law and equity. BIT has not persuaded the Court that there is justification for permitting equitable relief when sought under the estoppel nomenclature when equitable relief sought under the same circumstances would be denied if sought under the related part performance doctrine. The Court finds the reasoning in *William Henry Brophy College* persuasive. BIT is not entitled to relief under the equitable estoppel or part performance doctrines.

11

BIT in the same position as enforcing the rental agreement. There is nothing unique about Dollar Tree's tenancy that would require the Court to specifically enforce this agreement and require Dollar Tree to physically return to the Property. There is no indication that monetary damages would be an insufficient remedy. Because the legal remedy is adequate, equitable relief is unavailable, and because the equitable doctrines that BIT invoked are only available for a party seeking equitable relief, the part performance and estoppel defenses do not apply.

In sum, none of the asserted defenses bar the application of the Statute of Frauds. Consequently, the Court finds that the Statute of Frauds applies to the lease agreement between Dollar Tree and BIT, and that the agreement is unenforceable.[8]

### iii. The Year to Year Lease

Because the agreement is void under the Statute of Frads, the Parties are assumed to have engaged in a year-to-year lease. *See Crane v. Franklin*, 154 P. 1036, 1037-38 (Ariz. 1916) (citing 2 John Neilson Taylor, *The American Law of Landlord and Tenant* § 56 (9th Ed. 1904) ("[I]f a verbal lease for a longer period than one year is agreed upon, in which the rental value is determined, the terms, agreements, and covenants fully understood, and possession is taken thereunder, and rent paid or services rendered instead, by the lessee, although the lease may be void as a whole under the statute of frauds, the law, in order to protect the rights of the parties, will convert it into a lease from year to year.")).

Because Dollar Tree assumed the Property and began paying rent in October 2004, the yearly lease term runs from October through September. Dollar Tree has paid monthly rent through April 2010. BIT is potentially entitled to unpaid rent for the remaining lease term—the months of May 2010 through September 2010. Although BIT may pursue recovery for this

---

[8] The Parties briefed the issues of (i) whether Dollar Tree gave sufficient notice that it would not be exercising the AEP and (ii) whether Dollar Tree was required to pay holdover rent at a higher rate. Because the Court finds that the terms of the agreement are unenforceable, it is not necessary to discuss these issues.

period, genuine issues of material fact remain regarding when or if BIT could have restored operations following Dollar Tree's April 2010 exodus. Only this discrete issue remains for trial.

## VI. Conclusion

In accordance with the accompanying Order, Dollar Tree's Amended Motion for Summary Judgment (Dkt. No. 45) is GRANTED, for the reasons outlined above, on all issues except as to damages.[9] BIT's Motion for Partial Summary Judgment (Dkt. No. 51) is DENIED.

Alexandria, Virginia
December 1, 2011

/s/
Liam O'Grady
United States District Judge

---

[9] The Court invites the parties to resolve the damages issue themselves. If they are unable to do so, they must immediately contact United States Magistrate Judge T. Rawles Jones, Jr. to resume settlement discussions. In the event they are unsuccessful in a settlement conference, this issue shall be presented by affidavit and oral argument telephonically, in order to save the courts in the Eastern District of Virginia and the District of Arizona from bearing the significant expenses necessary to try this discrete issue.

13